IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
(Greeneville Division)

| | |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of CMR CONSTRUCTION & ROOFING, LLC and CMR CONSTRUCTION & ROOFING, LLC, in its own capacity<br>3006 N Lindbergh Blvd, Suite 703<br>Saint Ann, MO 63074-3242<br><br>        Plaintiff,<br>v.<br><br>COLSTON CONSTRUCTION INC.<br>300 Boone Road, Suite A-12<br>Burleson, TX 76028<br><br>SERVE:   Long-Arm Statute,<br>             Tenn. Code § 20-2-201(a)<br><br>and<br><br>SURETEC INSURANCE COMPANY<br>2103 City West Boulevard, Suite 1300<br>Houston, TX 77042<br><br>SERVE:   Long-Arm Statute,<br>             Tenn. Code § 20-2-201(a)<br><br>        Defendants. | Civil Action No. 2:23-cv-165 |

## **COMPLAINT**

COMES NOW The United States of America for the use and benefit of CMR Construction & Roofing, LLC and CMR Construction & Roofing, LLC, in its own capacity, by counsel, and in support of this Complaint states as follows and demands trial by jury:

## PARTIES

1. CMR Construction & Roofing, LLC (CMR) is a limited liability company organized under the laws of the state of Missouri with its principal place of business in Saint Ann, Missouri.

2. Colston Construction Inc. (Colston) is a corporation organized under the laws of the State of Texas, with its principal place of business located in Burleson, Texas.

3. SureTec Insurance Company (SureTec or the Surety) is a corporation organized under the laws of the State of Texas with its principal place of business located in Houston, Texas.

## JURISDICTION AND VENUE

4. This civil action arises under The Miller Act, 40 U.S.C. §§ 3133, et seq., which provides for both the jurisdiction and venue of this court.

5. As set forth herein, CMR entered into two oral contracts and/or implied-in-fact contracts with Colston to transact business in Tennessee in the form of supplying labor, services, and materials within the State of Tennessee and is subject to personal jurisdiction in this court, including through Tenn. Code § 20-2-223(a)(2).

6. As set forth herein, SureTec transacted business within the State of Tennessee by issuing performance and payment bonds on the subject project, located in Mountain Home, Tennessee and is subject to personal jurisdiction in this court, including through Tenn. Code § 20-2-223(a)(2).

7. This court has subject matter jurisdiction over all causes of action set forth herein based upon 40 U.S.C. § 3133(b)(3)(B) (the Miller Act) and pursuant to the supplemental jurisdiction of 28 U.S.C. § 1367(a).

8. The project for which both oral contracts were formed and the location where CMR supplied labor and materials which were incorporated into the project is located in Washington County, Tennessee, which lies within the jurisdiction of the United States District Court for the Eastern District of Tennessee, Greeneville division, pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

9. On or about March 11, 2022, Colston entered into two contracts with the United States, Department of Veterans Affairs (the VA) to supply labor and materials in furtherance of the rehabilitation and/or replacement of the roof and associated structures of several buildings within the James H. Quillen Medical Complex located in Mountain Home, TN 37684 (the Project), including specifically Building 8, Building 69, and Building 77 (the Prime Contracts). True and accurate copies of the Prime Contracts are attached hereto, collectively, as Exhibit 1.

10. Building 69 is associated with Project Number 621-22-111, in the amount of $336,652.00 (Building 69 Project). Building 8 is associated with Project Number 621-22-119, in the amount of $70,348.00 (Building 8 Project). Both Building Nos. 8 and 69 are included in a single Prime Contract No. 36C24922C0050.

11. Building 77 is associated with Project Number 621-22-112 (Building 77 Project), in the amount of $677,250.00 under Prime Contract No. 36C24922C0052.

12. After engaging in bargaining, on or about March 11, 2022, Colston and CMR entered into two oral contracts and/or implied-in-fact contracts in which CMR agreed to furnish

3

labor, services, and materials to the Project to perform the scope of work detailed in the Prime Contract associated with the Building 77 Project (the Building 77 Oral Contract) and the Prime Contract associated with the Building 8 Project and the Building 69 Project (the Building 69 Oral Contract) (collectively, the "Oral Contracts") as a first-tier subcontractor to Colston in exchange for good and valid consideration by Colston. CMR and Colston agreed that CMR would submit periodic Payment Applications, attached hereto as Exhibits 3, 4, 5, 6, 10, and 11, for completed work and materials supplied under the Oral Contracts. In exchange, Colston agreed to pay CMR promptly for CMR's Work performed in connection with the Project as reflected in the Pay Applications, inclusive of change orders. CMR agreed to accept payment in full for the amounts reflected in the Payment Applications from Colston, thus providing value and benefit to both CMR and Colston.

13. Following the formation of the Oral Contracts, the VA descoped Prime Contract No. 36C24922C0050 to remove all work associated with the Building 8 Project.

14. Colston, in turn, descoped the work associated with the Building 8 Project from the Building 69 Oral Contract by means of a deductive change order in the amount of $70,348.00. A true and accurate copy of the deductive change order is attached hereto as Exhibit 2.

15. Colston accepted the Work performed by CMR on the Building 77 Project.

16. Colston accepted the Work performed by CMR on the Building 69 Project but for a 120 square foot section of roofing that Colston refuses to allow CMR to complete.

17. Labor, services, and materials that CMR supplied to the Project were incorporated into the Project.

18. CMR's last day of work on the Building 77 Project was on or about April 30, 2023.

19. The original agreed sum of the Building 77 Oral Contract was $609,015.00.

20. Between March 1, 2023, and April 13, 2023, Colston requested a change order, increasing the agreed amount of the Building 77 Oral Contract by $9,447.18, for a total agreed price under the Building 77 Oral Contract of $618,462.18.

21. CMR submitted timely Pay Applications for its Work on the Building 77 Project. True and accurate copies of CMR's Pay Applications 1, 2, 3, and 4 to Colston are attached hereto as Exhibits 3, 4, 5, and 6.

22. Colston made several payments to CMR, totaling $415,000.00, for supplying labor, services, and materials to the Building 77 Project as agreed in the Building 77 Oral Contract.

23. Colston made a payment to CMR for supplying labor, services, and materials to the Building 77 Project on or about January 6, 2023, in the amount of $150,000.00. A true and accurate copy of the check issued by Colston to CMR is attached hereto as Exhibit 7.

24. Colston made a payment to CMR for supplying labor, services, and materials to the Building 77 Project on or about February 14, 2023, in the amount of $150,000.00. A true and accurate copy of the check issued by Colston to CMR is attached hereto as Exhibit 8.

25. Colston made a payment to CMR for supplying labor, services, and materials to the Building 77 Project on or about March 6, 2023, in the amount of $115,000.00. A true and accurate copy of the check issued by Colston to CMR is attached hereto as Exhibit 9.

26. On or about April 19, 2023, CMR submitted a final pay application for its completed Work on the Building 77 Project, demanding full payment, pursuant to the terms of the Building 77 Oral Contract. *See* Exhibit 6 attached hereto.

27. The Building 77 Project is substantially complete, and all of CMR's Work under the Building 77 Oral Contract is complete.

28. Upon information and belief, Colston received payments from the Department of Veteran Affairs for the Work performed by CMR on the Building 77 Project.

29. Despite demand, Colston refused and failed to pay the remaining balance due and owing under the Building 77 Oral Contract.

30. CMR's last day of work on the Building 69 Project was on or about June 20, 2023.

31. The original agreed sum of the Building 69 Oral Contract was $390,167.40.

32. On September 22, 2022, Colston descoped the Work for the Building 8 Project from its Oral Contracts with CMR and issued a deductive change order to CMR in the amount of $70,348.00, reducing the Building 69 Oral Contract agreed amount to $319,819.40. *See* Exhibit 2.

33. Between January and April of 2023, Colston requested a change order, increasing the agreed amount of the Building 69 Oral Contract by $53,505.06, to replace decking on the Building 69 Project.

34. This change order increased the total agreed price under the Building 69 Oral Contract to $373,324.46.

35. CMR provided labor, services, and materials to the Building 69 Project as agreed under the Building 69 Oral Contract.

6

36. CMR submitted a timely pay application for its Work on the Building 69 Project. A true and accurate copy of CMR's Pay Application 1 to Colston is attached hereto as Exhibit 10.

37. On or about November 17, 2023, CMR submitted a final pay application for its completed Work on the Building 69 Project, demanding full payment, pursuant to the terms of the Building 69 Oral Contract. A true and accurate copy of CMR's Final Pay Application for Work on the Building 69 Project to Colston is attached hereto as Exhibit 11.

38. The Building 69 Project is substantially complete but for a 120 square foot section of roofing for which CMR has supplied materials.

39. Colston will not allow CMR to install the remaining 120 square feet of roofing to reach substantial completion on the Building 69 Project.

40. Despite demand for full payment for otherwise completed Work on the Building 69 Project, Colston has failed and refused to pay any portion of the agreed amount of the Building 69 Oral Contract.

41. Upon information and belief, Colston received payments from the Department of Veteran Affairs for the Work performed by CMR on the Building 69 Project.

42. SureTec issued Payment Bond No. 4451748 (the Bond) to its principal, Colston, for the Project. A true and accurate copy of the Bond is attached hereto as Exhibit 12.

43. Following Colston's failure to pay CMR for its Work completed pursuant to the Oral Contracts, CMR submitted a claim for payment under the Bond to SureTec on or about November 13, 2023. A true and accurate copy of the claim on the Bond is attached hereto as Exhibit 13.

44. Despite demand by CMR, SureTec has failed to pay this claim against the Bond on behalf of its principal, Colston.

45. All labor, materials, and services that CMR provided to the Project, pursuant to the Oral Contracts, were performed and supplied in a good and workmanlike manner.

## COUNT I—VIOLATION OF THE MILLER ACT
### (against Colston and SureTec)

46. Colston is obligated to pay CMR for the labor, services, and materials that CMR supplied to the Project pursuant to the terms of the Oral Contracts, which directly supported the work performed under the Prime Contracts, and for which Colston failed to make full payment to CMR.

47. Colston failed to fulfill its obligation to pay CMR for labor, services, and materials supplied to the Project, in violation of the Miller Act.

48. CMR is entitled to payment from Colston pursuant to the Miller Act, 40 U.S.C. § 3133.

49. CMR fulfilled all statutory requirements under the Miller Act, 40 U.S.C. § 3133, to bring this action and seek payment for the labor, services, and materials it supplied to the Projects.

WHEREFORE, United States of America for the use and benefit of CMR Construction & Roofing prays for the following relief:

Judgment against Defendants, jointly and severally, in the amount of $576,786.64 plus pre-judgment and post-judgment interest, reasonable attorney's fees, expenses, and costs and for any other such relief as this Honorable Court may deem just and appropriate.

## COUNT II—BREACH OF THE PAYMENT BOND
### (against SureTec)

50. CMR repeats and realleges the preceding paragraphs 1-49 above as if fully set forth herein.

51. Under the terms of the Bond, SureTec is obligated to pay CMR for the labor, services, and materials CMR supplied to the Project pursuant to the terms of the Oral Contracts, which directly supported the work performed under the Prime Contract, and for which Colston unjustly failed to make full payment to CMR.

52. More than 90 days have elapsed since the last day CMR provided labor, services, and materials to the Project.

53. Less than one year has passed since the last day CMR provided labor, services, and materials to the Project.

54. On or about November 13, 2023, CMR gave notice to SureTec of its claim under the Bond.

55. CMR is entitled to payment from Colston, SureTec's principal, pursuant to the Miller Act, 40 U.S.C. § 3133 *et seq*.

56. CMR failed to fulfill its obligation under the Bond to pay CMR for labor, services, and materials that CMR supplied to the Project under the terms of the Oral Contracts for which Colston failed to make payment, in violation of the Miller Act.

57. CMR satisfied all conditions precedent to bring this action on the Bond.

WHEREFORE, Plaintiff, The United States of America for the use and benefit of CMR Construction & Roofing, LLC, requests judgment against SureTec Financial Corporation in the amount of any judgment entered against its principal as plead in an amount not less than

$576,786.64, plus pre-judgment interest, post judgment interest, and such other and further relief as the Court deems just and equitable.

## COUNT III—BREACH OF CONTRACT
### (against Colston)

58. CMR repeats and realleges the preceding paragraphs 1-57 above as if fully set forth herein.

59. CMR performed all its obligations under the Oral Contracts.

60. CMR demanded payment from Colston for performing fully under the Oral Contracts.

61. Colston breached the Oral Contracts by failing and refusing to pay CMR in full for labor, services, and materials provided by CMR in performing its scope of work under the Oral Contracts and pursuant to Colston's direction.

62. CMR suffered damages as a direct and proximate result of Colston's breach of contract.

WHEREFORE, CMR Construction & Roofing prays for the following relief:

(1) Judgment against Defendant Colston in the amount of $576,786.64 plus pre-judgment and post-judgment interest, reasonable attorney's fees, and any and all penalties for late payment under Tenn. Code § 12-4-707;

(2) Costs as permitted by applicable law and/or Rule 54 of the Federal Rules of Civil Procedure; and

(3) Any other such further relief as this Honorable Court may deem just and appropriate.

## COUNT IV—UNJUST ENRICHMENT
### (against Colston)

63. CMR repeats and realleges the preceding paragraphs 1-62 above as if fully set forth herein.

64. CMR provided valuable labor, services, and materials that were necessary for Colston to perform and complete its obligations under the Prime Contract.

65. Colston benefitted from CMR's labor, services, and materials, including but not limited to the fact that Colston could not have fully performed and completed its obligations under the Prime Contracts in the absence of the labor, services, and materials that CMR provided on the Project.

66. Colston acknowledged the Work performed by CMR as evidenced by oral and electronic communications between Colston and CMR, including a letter in which Colston threatened to terminate CMR for default. A true and accurate copy of this letter is attached hereto as Exhibit 14.

67. Despite Colston's acceptance of CMR's Work under the Oral Contracts, Colston failed and refused to pay CMR for the labor, services, and materials provided by CMR.

68. CMR suffered damages, and Colston has been unjustly enriched as a result of Colston's failure to pay CMR for the labor, materials, and services provided by CMR.

WHEREFORE, CMR Construction & Roofing prays for the following relief:

(1) Judgment against Defendant Colston in the amount of $576,786.64 plus pre-judgment and post-judgment interest, reasonable attorney's fees, and any and all penalties for late payment;

(2) Costs as permitted by applicable law and/or Rule 54 of the Federal Rules of Civil Procedure; and

(3) Any other such further relief as this Honorable Court may deem just and appropriate.

## COUNT V—VIOLATION OF THE PROMPT PAYMENT ACT
### (against Colston)

69. CMR repeats and realleges the preceding paragraphs 1-68 above as if fully set forth herein.

70. CMR submitted written payment applications for the labor, services, and materials it provided to the Project pursuant to the Oral Contracts, requesting payment.

71. Colston failed to remit payment to CMR within seven days of receipt of CMR's written request for payment for the labor, services, and materials it provided to the Project.

72. To date, Colston has failed to make full payment to CMR as required under the terms of the Oral Contracts.

73. Colston violated the Prompt Payment Act, codified at 48 C.F.R. § 52.232.27(c) by failing to pay CMR after receiving its written request for payment.

WHEREFORE, CMR Construction & Roofing prays for the following relief:

(1) Judgment against Defendant Colston in the amount of $576,786.64 plus pre-judgment and post-judgment interest, reasonable attorney's fees, and any and all penalties for late payment available under 48 C.F.R. § 52.232.27;

(2) Costs as permitted by applicable law and/or Rule 54 of the Federal Rules of Civil Procedure; and

(3) Any other such further relief as this Honorable Court may deem just and appropriate.

DATED: December 12, 2023    Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ John W. Reis
John W. Reis, Esq.
Tennessee BPR No. 024818
**FOX ROTHSCHILD LLP**
101 N. Tryon Street, Suite 1300
Charlotte, NC 28246
Telephone: 704-384-2692
jreis@foxrothschild.com

Counsel for CMR Construction & Roofing, LLC